## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| THE PHOENIX INSURANCE COMPANY, <br> *Plaintiff,* <br> v. <br><br> KNIFE RIVER CORPORATION SOUTH, <br> *Defendant,* <br> v. <br><br> PAVEMENT MARKING, LLC and GREAT AMERICAN INSURANCE COMPANY, <br> *Third-Party Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 4:22-CV-02859 |

## JUDGE PALERMO'S REPORT & RECOMMENDATION

This case arises from an insurance coverage dispute involving Plaintiff Phoenix Insurance Company's ("Phoenix") duty to defend and indemnify Defendant Knife River Corporation South ("Knife River").[1] Knife River has since filed its first amended counterclaim and third-party complaint, ECF No. 50, asserting claims for breach of contract against excess insurer Great American Insurance Company ("Great American") and subcontractor Pavement Marking, LLC ("Pavement"). Pending before the Court are Great American and Pavement's motions to dismiss

---

[1] The district judge to whom this case is assigned referred this matter for all pretrial purposes pursuant to 28 U.S.C. § 636. Order, ECF No. 25. A motion to dismiss is dispositive and therefore is appropriate for a report and recommendation. 28 U.S.C. § 636 (b)(1)(A).

Knife River's third-party claims. ECF Nos. 63, 64.

After considering the briefing,[2] the evidence, and the applicable law, the Court concludes that prior rulings in this case foreclose Great American's and Pavement's arguments. It is the law of the case that the indemnity provisions in the contract between Knife River and Pavement do not violate the Texas Anti-Indemnity Act ("TAIA"), Phoenix owed Knife River a duty to defend, and the duty to indemnify cannot be resolved on the pleadings. Therefore, the third-party defendants' motions to dismiss, which assert arguments based on the TAIA and the scope of the contractual indemnity provisions, should be denied.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **The Underlying State Court Lawsuit**

Knife River is the general contractor on a highway construction project with the Texas Department of Transportation. ECF No. 50 ¶ 7. Pavement entered into a subcontract agreement with Knife River to provide roadway striping services. *Id.* ¶ 8. The subcontract required Pavement to obtain insurance naming Knife River as an additional insured and "provide primary coverage." *Id.* ¶ 13. The subcontract also contained a section on indemnification. *Id.* ¶ 12. Pavement obtained an insurance policy from Phoenix covering the relevant period with a $1 million per occurrence

---

[2] Knife River responded to the motions to dismiss, ECF Nos. 66, 67, and the third-party defendants both filed replies, ECF Nos. 70, 71. The Court also held a Scheduling Conference on February 9, 2024, at which Great American argued its motion to dismiss.

limit. *Id.* ¶ 17. Pavement also obtained a $10 million per occurrence excess policy through Great American. *Id.* ¶ 21.

During the policy coverage period, Thomas Henry was involved in a fatal single-car accident on the stretch of road subject to the subcontract. *Id.* ¶¶ 6-7. The heirs to Henry's estate filed an action against Knife River and Pavement for negligence, premises liability, and wrongful death. *Id.* ¶ 6; *see also* Second Am. Pet., *id.* at 20-30; Fifth Am. Pet., ECF No. 66-1 at 4-18. Knife River tendered the Henry lawsuit to Pavement and its insurers for defense and indemnity pursuant to the subcontract and the policy, but they refused. ECF No. 50 ¶ 14. Subsequently, Knife River settled with the Henry plaintiffs in the underlying lawsuit. *Id.* ¶ 15. Later, Pavement reached a separate settlement with the Henry plaintiffs. *Id.* ¶ 16.

### B.     The Instant Federal Court Lawsuit

Phoenix filed the instant suit seeking a declaratory judgment that it owed no defense or indemnity to Knife River. Compl., ECF No. 1; Am. Compl., ECF No. 18. Initially, Phoenix filed a motion for judgment on the pleadings. ECF No. 13. Phoenix later sought summary judgment on its claims, arguing that the indemnity provisions in Pavement's subcontract violated the TAIA and were unenforceable. ECF No. 15. Knife River cross-moved for partial summary judgment on Phoenix's duty to defend. ECF No. 20.

In a report and recommendation, the Court recommended denying and

mooting Phoenix's motions for judgment and summary judgment while granting Knife River's cross-motion for summary judgment. R. & R., ECF No. 33 at 14-15. The Court found that Knife River was an additional insured under Pavement's insurance policy, and that Phoenix owed a duty to defend Knife River in the Henry lawsuit. *Id.* at 9-14. The Court addressed Phoenix's TAIA arguments in a footnote, reasoning that the TAIA does not apply to the duty to defend, but even if the TAIA applied, the indemnity provisions do not violate the TAIA because they do not cover Knife River's own negligence. *Id.* at 11 n.5. Phoenix filed objections, reraising and clarifying its TAIA arguments. ECF No. 36.

Ruling on the objections, the district judge entered an order modifying and adopting the report and recommendation. Mem. & Order, ECF No. 46. In particular, the Court found that the TAIA applies to the duty to defend but agreed that the subcontract does not violate the TAIA. *Id.* at 4. The Court clarified that "the TAIA prohibits additional-insured coverage to the extent that Phoenix may be required to defend Knife River in claims caused by Knife River's—as opposed to [Pavement]'s—alleged wrongdoing." *Id.* at 5. The Court further held that because Phoenix owed a duty to defend Knife River in the Henry suit, "the duty to indemnify cannot be resolved at the summary judgment stage." *Id.* (citing *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 459 (5th Cir. 2011) (explaining that an insurer's duty to indemnify may only be resolved at summary judgment when "the

4

insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify")).

Upon settling the Henry lawsuit, Knife River sought leave to amend its counterclaim and file a third-party complaint naming Pavement and Great American as third-party defendants. ECF No. 37. Knife River sought to pursue claims for breach of contract, alleging that Pavement and its insurers owed a duty to defend and indemnify in the underlying lawsuit. *Id.* The Court granted leave, ECF No. 49, and the third-party defendants filed the instant motions to dismiss, ECF Nos. 63, 64.

## II.   THE STANDARD FOR MOTIONS TO DISMISS.

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but it must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Courts must construe all well-pleaded "facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted.'" *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quotation omitted). Legal conclusions, however, are not entitled to the same assumption of

truth. *Iqbal*, 556 U.S. at 678-79. Thus, a pleading must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The standard for plausibility "is not akin to a 'probability requirement,'" though it does require more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*

When ruling on a Rule 12(b)(6) motion, a court must exclude all "matters outside the pleadings," or else convert the motion into one for summary judgment. FED. R. CIV. P. 12(d). A court may therefore consider the contents of the pleadings, including attachments thereto, as well as any documents attached to the motion to dismiss, if they are referenced in the plaintiff's complaint and are central to the claims. *Boudreaux v. Axiall Corp.*, 564 F. Supp. 3d 488, 498 (W.D. La. 2021). Additionally, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 322 (E.D. Tex. 2021) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)). But a court should not evaluate the merits of the allegations—at the motion-to-dismiss stage, it must satisfy itself only that the "plaintiff has adequately pleaded a legally cognizable claim." *Bright v. City of Killeen*, 532 F. Supp. 3d 389, 396 (W.D. Tex. 2021) (citing *United States ex rel. Riley v. St. Luke's Episcopal*

6

*Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

### III.   THE COURT EXCLUDES OUTSIDE EVIDENCE AT THE MOTION-TO-DISMISS STAGE.

As a preliminary matter, the Court must determine whether it may consider the exhibits attached to the briefing. Great American attaches to its motion to dismiss a copy of the confidential settlement agreement between Knife River and the Henry plaintiffs from the underlying state lawsuit.[3] ECF No. 63-1. In response, Knife River attaches the fifth amended petition from the underlying lawsuit and excerpts from several depositions. ECF No. 66-1. Neither party raises any objection to the Court's consideration of this evidence. Instead, Great American asserts that the settlement agreement falls under the exception for "documents specifically referred to in the plaintiff's pleading and central to [the] plaintiff's claims." ECF No. 63 at 11 n.7 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). Knife River urges the Court to convert the motion to into one for summary judgment. ECF No. 66 at 16 (citing FED. R. CIV. P. 12(d)).

As explained further below, the Court recommends denying both motions to dismiss, so Knife River is not prejudiced by consideration of the attached evidence.

---

[3] Great American also attaches the text of two district court opinions cited in its motion. ECF No. 63-2. The Court may consider these documents because the opinions are "legislative facts," and thus judicial notice is unnecessary. *See* FED. R. EVID. 201(a) advisory committee's note to 1972 proposed rules (noting that the rules do not govern "legislative facts," which refers to facts relevant "to legal reasoning," such as "the formulation of a legal principle or ruling by a judge or court"). Indeed, the same could have been accomplished by providing the Westlaw citations.

Nonetheless, the Court agrees with Great American that the settlement agreement may be considered without converting the motion. The third-party complaint refers to a "Confidential Settlement Agreement and Release" between Knife River and the Henry plaintiffs, ECF No. 50 ¶ 15, and Knife River alleges breach of contract due to Great American's refusal to indemnify for that settlement agreement, *id.* ¶¶ 35, 38. Accordingly, the document is referenced in and central to Knife River's claims. *See Collins*, 224 F.3d at 499. More importantly, Knife River does not object. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (explaining that "the plaintiffs did not object to, or appeal, the district court's consideration of those documents" in *Collins*, which "was central to this Court's approval of that practice").

As for the evidence Knife River attaches to its response, only the Henry plaintiffs' second amended petition is referenced in and attached to the third-party complaint, not the fifth amended petition. ECF No. 50, ¶ 6; *id.* at 20-30. However, "[w]hen pleadings in the underlying lawsuit have been amended, the court analyzes the duty to defend by examining the 'latest, and only the latest, amended pleadings.'" *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329-30 (5th Cir. 2022) (quotation omitted). Thus, the Court must ignore the second amended petition and only consider the most recent iteration. The fifth amended petition was the operative pleading at the time of settlement and when the Court issued its prior report and recommendation. *See* R. & R., ECF No. 33 at 4, 14 (citing fifth amended petition).

8

Because the document already exists on this Court's docket, ECF No. 20-7, it is subject to judicial notice, *see In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019) (observing that courts may "take judicial notice of its own records" (quotation omitted)); *cf. Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (noting that judicial notice of publicly available documents is permissible on motion to dismiss). Once again, Great American does not object to any of Knife River's exhibits.

Notwithstanding the lack of objections, the Court is aware of no basis for considering deposition statements on issues of disputed fact at this stage. Knife River identifies none and instead suggests the Court should convert the motion into one for summary judgment. ECF No. ECF No. 66 at 16. Whether to accept materials outside the pleadings is discretionary, 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed.); *accord Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988)), although if accepted then the motion must be converted, FED. R. CIV. P. 12(d). The Court declines to consider those documents or convert the motion to dismiss into a motion for summary judgment. The Court thus excludes from consideration Exhibits B through D attached to Knife River's response. ECF No. 66-1 at 20-48.

## IV.   BOTH MOTIONS TO DISMISS SHOULD BE DENIED.

Great American and Pavement both argue that Knife River's claims are barred for various reasons. The third-party defendants highlight the settlement agreement

with the Henry plaintiffs, contending that Texas law prevents "satellite litigation"

post-settlement. Neither party disagrees with nor seeks reconsideration of the

existing rulings in this case. In response, Knife River asserts that "both Motions

mirror the same objection put forward by Phoenix and already ruled upon by the

Court." ECF No. 67 at 5. Knife River also contends that the third-party defendants'

argument that Knife River seeks to recover for its own negligence is misguided

because the third-party complaint seeks recovery for Pavement's negligence, not

Knife River's. As explained below, the Court agrees with Knife River.

**A.      The Memorandum and Order Adopting as Modified the Court's Report and Recommendation Controls.**

"Under the 'law of the case' doctrine, 'a decision on an issue of law made at

one stage of a case becomes a binding precedent to be followed in successive stages

of the same litigation.'" *F.D.I.C. v. McFarland*, 243 F.3d 876, 884 (5th Cir. 2001)

(quotation omitted).

> The law-of-the-case doctrine is based on the salutary and sound public policy that litigation should come to an end. . . . Generally, when a court decides an issue, that decision should continue to govern the same issues in subsequent stages of the same case. The doctrine has an important limitation: It applies only to issues that were actually decided, rather than all questions in the case that might have been decided but were not. But the issues need not have been explicitly decided; the doctrine also applies to those issues decided by necessary implication.

*In re AKD Investments*, 79 F.4th 487, 491 (5th Cir. 2023) (cleaned up). Although the

law-of-the-case doctrine does not "prevent a district court from reconsidering prior

rulings," it "is a rule of convenience designed to prevent unnecessary reconsideration of previously decided issues" that "yields to adequate reason." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) (quotation omitted).[4]

The Court previously issued a report and recommendation on motions for summary judgment, which the district judge adopted as modified. *See* R. & R., ECF No. 33; Mem. & Order, ECF No. 46. No party seeks reconsideration, and Great American even concedes that the summary judgment motions were "correctly" decided. ECF No. 63 at 2-3, 5. Accordingly, these rulings control this case. *See* Mem. & Order, ECF No. 46. In sum, the Court has already ruled on four issues that are not subject to further dispute here: (1) the indemnity provisions do not violate the TAIA;

---

[4] The principles underlying the law-of-the-case doctrine apply with equal if not greater force as between a magistrate judge and a district judge. *See, e.g.*, *Esposito v. Home Depot U.S.A., Inc.*, No. CIVA 06-153S, 2008 WL 2943368, at *8 (D.R.I. July 29, 2008), *vacated on other grounds*, 590 F.3d 72 (1st Cir. 2009) (collecting cases); *Taylor v. Nat'l Grp. of Cos., Inc.*, 765 F. Supp. 411, 413-14 (N.D. Ohio 1990) (declining to reconsider district judge's prior rulings). While the Fifth Circuit has not delineated the boundaries of magistrate judge jurisdiction in this respect, it has indicated that consent and transfer pursuant to 28 U.S.C. § 636(c) affects the result:

> For a magistrate judge to decline to follow a district judge's opinion may be unusual, but when (1) both parties consent to the jurisdiction of the magistrate judge and (2) the district judge specifically designates the magistrate judge to conduct civil proceedings, the magistrate judge "may act in the capacity of a district court judge" and is not bound by prior opinions expressed by the district judge.

*Cooper v. Brookshire*, 70 F.3d 377, 378 n.6 (5th Cir. 1995) (quotation omitted). By negative implication, therefore, a magistrate judge remains bound by the district judge's prior opinions on a § 636(b)(1) referral. *See JPMorgan Chase Bank, N.A. v. Ablett*, No. 4:17-CV-00888-ALM-CAN, 2018 WL 4517628, at *9 n.7 (E.D. Tex. Aug. 17, 2018), *adopted*, No. 4:17-CV-888, 2018 WL 4512064 (E.D. Tex. Sept. 20, 2018) (instructing parties to "present such argument to the district court via specific written objections" where the assigned district judge previously rejected identical arguments (citing *Cooper*, 70 F.3d at 378 n.6)). This case is before the Court on a referral basis, not consent. *See* ECF No. 25; 28 U.S.C. § 636(b)(1).

(2) the indemnity provisions do not permit recovery for Knife River's own negligence; (3) Phoenix owed a duty to defend in the underlying lawsuit; and (4) the duty to indemnify must be resolved at trial. *Id.* at 5. To the extent that the motions to dismiss attempt to circumvent any of those core rulings, the law-of-the-case doctrine bars such arguments.

### B. Great American's Reliance on *Signature* Is Misplaced, and the Law of the Case Precludes Its TAIA Arguments.

Great American's primary argument in its motion to dismiss, ECF No. 63 at 6-8, is premised on *Signature Industrial Services, LLC v. International Paper Co.*, 638 S.W.3d 179 (Tex. 2022). In that case, the issue was whether an indemnity agreement covered expenses incurred defending a claim attributable to the indemnitor's actions, even though the plaintiff never sued the indemnitor. *Id.* at 195-96. The court of appeals rejected indemnity arguments based on the language of the contract. *Id.* at 195. The Texas Supreme Court affirmed on different grounds, instead holding the indemnity clause violated the TAIA, which in certain construction contracts forbids indemnification of claims caused by the indemnitee's own wrongdoing. *Id.* (citing TEX. INS. CODE § 151.102). *Signature* clarified that, for purposes of the TAIA, the allegations in the underlying complaint determined the relevant "claim" and whether it was "caused by" the indemnitee, not the entity later determined to be at fault. *Id.* at 196.

Great American argues that the underlying case included claims against Knife

River for its own negligence. ECF No. 63 at 4-5. It then argues that, under *Signature*, Knife River cannot "circumvent the TAIA's limitations on its contractual indemnity or additional insured coverage rights by attempting to now prove in this case that the 'true cause' of the Henry's [*sic*] negligence claims against it was [Pavement]'s negligence." *Id.* at 7-8. Great American further asserts that *Signature* overturned long-standing Texas law that differentiates between the duty to defend and the duty to indemnify, at least in cases where the TAIA applies, allowing the duty to indemnify to be determined at the same time as the duty to defend. *Id.* at 8.

Great American's arguments are unpersuasive for several reasons. First, the issue of whether the indemnity provisions here violate the TAIA has already been decided—they do not. Mem. & Order, ECF No. 46 at 5; R. & R., ECF No. 33 at 10-12. Phoenix previously raised the same provision of the TAIA, TEX. INS. CODE § 151.102, in its motion for summary judgment and objections. *See* ECF Nos. 15, 36. The Court reasoned that the indemnity provisions here do not violate the TAIA because they do not indemnify Knife River for its own negligence. Mem. & Order, ECF No. 46 at 5; R. & R., ECF No. 33 at 11 n.5. The Court even addressed the effect of *Signature*, reasoning that at most the TAIA would render an offending indemnity provision ineffective but not void. R. & R., ECF No. 33 at 11 n.5 (citing *Signature*, 638 S.W.3d at 195-96). That ruling controls, and Great American's invocation of *Signature* cannot alter the conclusion that the TAIA is not violated here.

Second, likewise, the Court's prior rulings regarding the duty to defend and the duty to indemnify control. Insurance policies generally contain both a duty to defend and a duty to indemnify the insured, which "are distinct and separate duties" that "enjoy a degree of independence from each other." *D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 743-44 (Tex. 2009) (quotation omitted). Under Texas's "eight-corners" doctrine, "the only two documents relevant to the duty-to-defend inquiry are the insurance policy and the petition," and the operative facts are those "alleged in the underlying state court proceedings." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839-40 (5th Cir. 2012). In contrast, "it is well settled that the 'facts actually established in the underlying suit control the duty to indemnify.'" *D.R. Horton*, 300 S.W.3d at 744 (quotation omitted). The Court has already ruled that Phoenix owed a duty to defend and that the duty to indemnify cannot be resolved by dispositive motions. Mem. & Order, ECF No. 46 at 5; R. & R., ECF No. 33 at 13-14. The Court will not entertain Great American's entreaty to decide its duty to indemnify on a motion to dismiss.[5]

---

[5] Even if *Signature* and the TAIA rewrote years of precedent by eliminating the separate test for the duty to indemnify, under the eight-corners doctrine, only "the insurance policy and the third-party plaintiff's pleadings in the underlying litigation" are relevant, and "a court may not read facts into the pleadings, [or] look outside the pleadings." *ACE Am.*, 699 F.3d at 840 (quotation omitted). Great American's references to allegations in Knife River's third-party complaint and settlement agreement are thus *beyond the scope* of the eight-corners doctrine. Great American seems to acknowledge this by arguing that "the claims alleged by the Henry plaintiffs' pleading, rather than any factual determination of the 'true' cause of Mr. Henry's death in this lawsuit, controls." ECF No. 63 at 8. Yet, in the same sentence, Great American goes beyond those pleadings, asking the Court to determine "whether or not [Knife River]'s settlement with the Henry plaintiffs represents

Third, *Signature* is factually distinguishable. *Signature* involved only the duty to defend. 638 S.W.3d at 195 (addressing indemnity "for expenses incurred defending the suit"). The duty to indemnify was never at issue because the defense in the underlying case was successful, and the court affirmed dismissal of those claims. *See id.* at 196-97. Great American cites no cases relying on *Signature* for the duty to indemnify, nor is the Court aware of any.[6] *Signature* also pertained to the interpretation of an "indemnity agreement," *id.* at 196, not an insurance contract. How this analysis changes when an insurer who owes a duty to defend but refuses is also not addressed. Equally relevant to *Signature*'s holding was the absence of any direct claims asserted against the indemnitor.[7] Whereas here, the Henry plaintiffs asserted claims against *both* Knife River and Pavement. ECF No. 50 at 22-26; ECF No. 66-1. Great American therefore stretches *Signature*'s holding far beyond the

---

a settlement for which the TAIA bars [Knife River] from receiving contractual indemnity or additional insured coverage." *Id.* The Court already reviewed the Henry plaintiffs' fifth amended petition and the insurance documents, finding that Phoenix owed a duty to defend. R. & R., ECF No. 33 at 13-14; Mem. & Order, ECF No. 46 at 5. Great American cites no cases where a court has applied the TAIA to the duty to indemnify *or* the duty to defend in such a manner.

[6] The only decision on Westlaw citing *Signature*'s TAIA discussion and the "duty to indemnify" on the same page is this Court's previous report and recommendation. *See Phoenix Ins. Co. v. Knife River Corp. S.*, No. 4:22-CV-02859, 2023 WL 5687039, at *4 & n.5 (S.D. Tex. July 27, 2023), *adopted as modified*, No. 4:22-CV-02859, 2023 WL 5846803 (S.D. Tex. Sept. 11, 2023).

[7] The indemnitee, International Paper Co., sought costs of defending identical breach-of-contract claims filed by co-plaintiff Jeffry Ogden, the president of indemnitor Signature Industrial Services, LLC. *Signature*, S.W.3d at 185. International argued that Ogden's injuries were in fact caused by Signature's failure to pay payroll taxes. *Id.* at 196. Because Ogden only sued International and never alleged any breach of contract by his employer, the *Signature* court held that, for purposes of the TAIA, Ogden's "claim" was "caused by" International's alleged breach. *Id.*

15

narrow facts supporting that decision.

Finally, Great American's interpretation of *Signature* is unpersuasive. Great American's argument hinges upon two sentences highlighted in its motion:

> The statute does not require factual inquiry into the "true" cause of the plaintiff's injuries. Absent fraud or some other unusual circumstance not present here, examining the pleadings *will generally be a sufficient basis* to determine whether the "claim" was "caused by" the fault or breach of contract of the party seeking indemnification.

*Signature*, 638 S.W.3d at 196 (emphasis added); ECF No. 63 at 7. In other words, where an indemnitor or insurer owes no duty to defend, then *usually* there is no duty to indemnify—this statement is fully consistent with existing Texas law. Although the duty to indemnify is a separate duty based on the underlying facts,

> the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*.

*Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis in original); *accord VRV Dev.*, 630 F.3d at 459.[8] Reaffirming this language, the *D.R. Horton* court explained that this narrow exception is case-specific:

> This conclusion was grounded on the impossibility that the drive-by shooting in [*Griffin*] could be transformed by proof of any conceivable set of facts into an auto accident covered by the insurance policy. It was not based on a rationale that if a duty to defend does not arise from the pleadings, no duty to indemnify could arise from proof of the allegations in the petition. These duties are independent, and the

---

[8] Moreover, the Court quoted this same language, Mem. & Order, ECF No. 46 at 5-6 (quoting *VRV Dev.*, 630 F.3d at 459), finding that the duty to indemnify could not be determined before trial, thus implying that this case was *not* one of those rare situations. The law of the case controls.

existence of one does not necessarily depend on the existence or proof of the other.

300 S.W.3d at 745. Thus, the *Signature* court's acknowledgment that "generally" no underlying facts are necessary to determine whether the TAIA applies is a simplified restatement of the law—if an indemnity agreement is void because it violates the TAIA, then no duty to defend *or* indemnify can arise.

Contrary to Great American's argument, the Texas Supreme Court has not indicated that its decision in *Signature* was intended to rewrite the whole field of indemnity. In fact, the Texas Supreme Court reaffirmed *D.R. Horton*'s general rule using the same language less than a month after it decided *Signature*:

> We have held that a "plaintiff's factual allegations that potentially support a covered claim are all that is needed to invoke the insurer's duty to defend; whereas, the facts actually established in the underlying suit control the duty to indemnify."

*Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 471 (Tex. 2022) (cleaned up). While *Pharr* did not involve the TAIA, there is no indication the Texas Supreme Court believed *Signature*'s statements on the duty to defend extended to the realm of an insurer's duty to indemnify, which are "distinct and separate duties," "not interdependent," and "rarely coextensive." *Id.* (cleaned up).

Thus, the Court finds Great American's arguments without merit.

## C.     The Law of the Case Controls Pavement's Fair Notice Arguments.

Pavement's primary argument, ECF No. 64 at 5-13, is that even though the

17

indemnity provisions do not violate the TAIA, they are still unenforceable under Texas's "fair notice" rules. These requirements apply to indemnity agreements that purport to "exculpate a party from the consequences of its own negligence," which would be "an extraordinary shifting of risk." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). "The fair notice requirements include the express negligence doctrine and the conspicuousness requirement." *Id.* Under the "express negligence" test, "the intent of the parties must be specifically stated within the four corners of the contract." *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 708 (Tex. 1987). The Texas Supreme Court adopted this rule of "strict construction of indemnity contracts" to avoid never-ending litigation over vague language. *Id.* at 707. This rule also extends to defense costs for claims alleging the indemnitee's own negligence. *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 815 (Tex. 1994). The "conspicuousness" prong then "mandates that something must appear on the face of the contract to attract the attention of a reasonable person when he looks at it." *Dresser*, 853 S.W.2d at 508 (cleaned up).

However, Knife River responds that those cases and the "fair notice" rules do not apply where the indemnity agreement does not cover the indemnitee's own negligence. ECF No. 67 at 9-10 (collecting cases). The Court agrees.[9] Instead, the

---

[9] Because the Court concludes that the "fair notice" requirements do not apply in this context, the Court need not consider Knife River's alterative argument that Pavement had actual knowledge of the subcontract's indemnity provisions. ECF No. 67 at 11-12.

18

Texas Supreme Court's ruling in *Gulf Insurance Co. v. Burns Motors, Inc.*, 22 S.W.3d 417 (Tex. 2000), controls in this situation. In *Gulf Insurance*, the court held that if an indemnity agreement "does not contemplate indemnifying the indemnitee from consequences of his own negligence," then "the express negligence doctrine does not apply." *Id.* at 424; *accord AXA Corp. Sols. Niederlassung Deutschland v. Lectrus Corp.*, No. 4:15-CV-3606, 2017 WL 8794875, at *5 (S.D. Tex. Dec. 11, 2017) ("The fair notice requirements do not apply when the indemnification provision is limited to the indemnitor's own negligence."). Because the indemnity provisions here do not purport to indemnify Knife River for its own negligence, ECF No. 50 ¶ 12, and Knife River only seeks indemnity for Pavement's negligence, *id.* ¶¶ 27, 35, the "fair notice" requirements are inapplicable.

Rather than attempt to distinguish any of the cases Knife River cites for the inapplicability of the "fair notice" requirements, Pavement's arguments are based on a misunderstanding of Knife River's third-party complaint.[10] Pavement insists that, "[a]lthough Knife River maintains it is not seeking indemnity for its own negligence, its contention is belied by the facts and Texas law." ECF No. 71 at 2. Yet, the third-party complaint seeks only indemnity "for defense costs and for any part of a judgment or settlement attributable to [Pavement]'s negligence." ECF No. 50 ¶ 27.

---

[10] Great American likewise insists that Knife River is attempting to "recharacterize its settlement as actually representing payment for someone else's negligence instead of its own so as to avoid the unenforceability of the indemnity provision as to its own negligence." ECF No. 70 at 10.

Knife River reiterates in its response that it "does not now, nor has it ever sought indemnification for its own negligence, if any." ECF No. 67 at 2. At the motion-to-dismiss stage, the Court is obligated to treat "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation omitted). Pavement cites no authority permitting the adoption of *its* version of the facts in this procedural posture.

More importantly, the Court has already found that the indemnity provisions here are enforceable *because* they do not cover Knife River's own negligence. *See* R. & R., ECF No. 33 at 11-12 & n.5; Mem. & Order, ECF No. 46 at 5. In other words, the prior ruling that the indemnity provisions here do not violate the TAIA necessarily implies they do not violate "fair notice" for the same reason, that Knife River does not seek indemnity for its own negligence. The law of the case controls, and Pavement cannot reframe the same arguments to circumvent those prior rulings. Accordingly, because the "fair notice" requirements do not apply to the indemnity provisions at issue here, Pavement's arguments lack merit.[11]

---

[11] Pavement also seeks dismissal of Knife River's breach-of-contract claim for failure to obtain adequate insurance. ECF No. 50 ¶ 44. Pavement argues that it "obtained the insurance required by the Subcontract," and whether that "insurance may not ultimately afford coverage to Knife River does not mean that PMI breached the Subcontract." ECF No. 64 at 13. Pavement cites no authority for this proposition. Indeed, Pavement's entire argument on this claim is less than half a page. This argument is therefore waived due to inadequate briefing. *See United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (summarizing standards for inadequate briefing); *New Cingular Wireless, LLC v. City of Brownsville*, No. 1:19-CV-91, 2019 WL 8499340, at *11 (S.D. Tex. Dec. 20, 2019) (finding arguments waived where party "fail[s] to adequately brief its arguments, and support them with facts, evidence, or applicable authority"). The Court must accept the allegations as true.

**D.    There Is No Broad Policy Against Satellite Litigation, and Knife River's Settlement Does Not Change the Court's Prior Analysis.**

Great American and Pavement both raise Knife River's settlement with the Henry plaintiffs as a fact that somehow alters the Court's analysis. Great American asserts that Texas courts recognize a broad policy against "satellite litigation":

> where a party is sued for its own negligence and elects to settle the case, it cannot thereafter attempt to use satellite litigation to try and recharacterize its settlement as actually representing payment for someone else's negligence instead of its own so as to avoid the unenforceability of the indemnity provision as to its own negligence.

ECF No. 63 at 10. Pavement likewise insists that "Texas law squarely prohibits an indemnitee from litigating after settlement the question of liability under an unenforceable indemnity agreement." ECF No. 64 at 13-14. This policy is drawn from several cases, including decisions from this District. *See Amerisure Mut. Ins. Co. v. Am. Home Assur. Co.*, No. 4:07-CV-01760, 2008 WL 8053468, at *2-3 (S.D. Tex. Aug. 4, 2008) (Ellison, J.) (finding post-settlement lawsuit over indemnity agreement "precisely the kind of satellite litigation disapproved of in Texas").

Even if this were the policy in Texas, these arguments fail to the extent they presuppose that Knife River is seeking to recover for its own negligence and that the indemnity provisions are unenforceable as a result. As the Court has already noted, the law of the case precludes those propositions, and the Court must accept Knife River's allegations as true at the motion-to-dismiss stage.

Moreover, Great American's reliance on a purported policy against "satellite

21

litigation" is misplaced. ECF No. 63 at 9-10. This reference comes from *Fisk*, which observed: "The express negligence test was established by this Court in *Ethyl* in order 'to cut through the ambiguity' of indemnity provisions, thereby reducing the need for *satellite litigation* regarding interpretation of indemnity clauses." 888 S.W.2d at 814 (emphasis added). *Fisk* disapproved of a contrary rule "regarding defense expenses" that would "depend on the outcome of the underlying suit." *Id.* at 815. Rather than making "indemnitors liable for a cost resulting from a claim of negligence which they did not agree to bear"—particularly where an indemnitee "might settle cases without admitting negligence, leaving the indemnitor to pay the costs of settlement and defense"—*Fisk* held that the better rule would be for the enforceability of an indemnity agreement to be "established as a matter of law from the pleadings." *Id.* The underlying suit settled on appeal, but the parties asserted "the settlement could still be contested by the indemnitor," so in a footnote, the *Fisk* court countered that "such a result retards rather than advances the policy of preventing satellite litigation regarding interpretation of indemnity contracts." *Id.* at 815 n.2.

This is far from a blanket disapproval of *all* post-settlement litigation. *Fisk* dealt solely with "defense expenses" and it only involved an indemnity agreement, not an insurance contract. *Fisk* is further limited to the context of *Ethyl*'s "express negligence" test, which does not apply here. Instead, *Fisk* effectively represents an

extension of the eight-corners doctrine to indemnity agreements. This is evident in

*Fisk*'s discussion of out-of-state case law, which noted approvingly this reasoning:

> [T]he standard for determining whether a contractual indemnitor has a duty to defend is the same as in cases involving an insurer's duty. When the indemnitor has no duty to defend, the indemnitee may not recover attorney's fees or defense costs.

*Fisk*, 888 S.W.2d at 815 (citing *St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.*, 475 P.2d 69 (Or. 1970)). But in this case, the Court already found that Phoenix

owed a duty to defend. Mem. & Order, ECF No. 46 at 5. The third-party defendants

never adequately explain why Knife River's settlement alters that outcome.

Further, the briefing conflates indemnity agreements with insurance contracts.

Insurance contracts generally include two duties: the duty to defend, and the duty to

indemnify. *See D.R. Horton*, 300 S.W.3d at 743-44. The duty to defend is much

broader than the duty to indemnify, and a duty to defend may arise even though the

suit is frivolous and there is no duty to indemnify. *Id.* In contrast, an indemnity

agreement, like the one at issue in *Fisk*, may only include the duty to indemnify,

leaving any duty to defend unstated and vague. Thus, where an indemnitor agrees to

indemnify for only certain claims but not others, imposing a duty to defend *all*

claims, even those not covered by the indemnity agreement, "would leave

indemnitors liable for a cost resulting from a claim of negligence which they did not

agree to bear." *Fisk*, 888 S.W.2d at 815. In other words, the "satellite litigation" *Fisk*

disapproved of refers to lawsuits on ambiguously worded indemnity agreements

23

where the indemnitee seeks to interpret the language in such a way as to impose an additional duty to defend. Nothing here is ambiguous, however, as the Court *already construed* the indemnity provisions and the insurance contract, finding that Phoenix owed a duty to defend.

Pavement acknowledges that *Fisk* dealt only with defense costs, ECF No. 64 at 15-16, and thus points to *Gilbane Building Co. v. Keystone Structural Concrete, Ltd.*, 263 S.W.3d 291, 294 (Tex. App.—Houston [1st Dist.] 2007, no pet.). However, *Gilbane* is distinguishable, as that case also dealt only with indemnity agreements, not insurance contracts. *Id.* at 296. Additionally, the underlying plaintiff never sued the indemnitor, his employer, because he already received workers' compensation benefits. *Id.* at 294 n.1. Pavement offers no explanation for these factual differences.

Great American further argues that this District has already recognized this policy against "satellite litigation" in *Amerisure*. ECF No. 63 at 8-9. The *Amerisure* court analyzed both *Fisk* and *Gilbane* to conclude that the specific dispute before it was "precisely the kind of satellite litigation disapproved of in Texas," 2008 WL 8053468, at *3, which was a fact-specific finding. *Amerisure* involved two insurance companies, both of whom had settled with the underlying plaintiff and were arguing an indemnity agreement via subrogation. *Id.* at *1. Although the opinion is short on facts, there was apparently ample "ambiguity in the contract," *id.* at *3 n.1, and the lawsuit was "for the purpose of interpreting the indemnity agreement," *id.* at *2. It

24

was also undisputed that the indemnity clause "fails the express negligence test," *id.* at *3, which implies that the indemnitee sought to recover for its own negligence. The procedural posture was that of a motion for leave to amend, *id.* at *1, but it is unclear what claims remained in the original complaint.

Whatever value *Amerisure* may have had, however, is severely undercut by *Colony Insurance Co. v. Adsil, Inc.*, No. 4:16-CV-408, 2018 WL 2562555 (S.D. Tex. June 4, 2018) (Ellison, J.). In the context of a choice-of-law inquiry, the indemnitor, CJO Enterprises, Inc., argued the existence of the same fundamental Texas policy:

> Texas law instructs courts to examine only the contents of the pleading in the litigation that has imposed costs on the indemnitee. If the pleading names the indemnitee and the indemnitee wishes to be indemnified, the express negligence rule must be satisfied, no matter the actual facts giving rise to the pleading. [*Fisk* and *Gilbane*] take this approach, eschewing an inquiry into actual facts, because such an inquiry "retards rather than advances the policy of preventing satellite litigation regarding interpretation of indemnity clauses."

*Id.* at *8 (citations and footnote omitted). However, noting that the indemnitor failed to fully reconcile seemingly contradictory case law, the district court concluded that:

> Texas law is not quite as clear cut as CJO presents it. CJO's briefing makes no mention of *Gulf Insurance Company v. Burns Motors*, the Texas Supreme Court's ruling that the express negligence rule does not apply when an indemnitee is not seeking to be indemnified for the costs of its own wrongdoing. CJO leaves unreconciled the apparent conflict between that ruling and those of its favored cases. CJO also makes no mention of Texas's general rule that the "facts actually established in the underlying suit control the duty to indemnify."

*Id.* (quoting *D.R. Horton*, 300 S.W.3d at 744). The *Colony* court further noted other

Texas courts have "permitted an inquiry into the facts underlying a lawsuit against an indemnitee, rather than looking only to the pleadings." *Id.* at \*8 (discussing *Bell Helicopter Textron Inc. v. Houston Helicopters, Inc.*, No. 2-09-316-CV, 2010 WL 3928741, at \*3, 5-6 (Tex. App.—Fort Worth Oct. 7, 2010, pet. denied)).

Great American and Pavement present the same arguments here, and for the same reasons the *Colony* court expressed, the Court remains unconvinced.[12] While Great American attempts to distinguish *Colony* by pointing out that the TAIA was not involved, ECF No. 63 at 10 n.6, the same is true of every other case cited for this alleged policy. As explained above, *Signature* does not alter the Court's prior reasoning, so any reliance on it is unavailing. In fact, federal courts frequently engage in post-settlement analysis of the duty to indemnify. *See, e.g.*, *ACE Am.*, 699 F.3d at 844 (remanding duty to indemnify "for the cost of its settlement in the state court proceedings" after finding no duty to defend). Instead, despite assurances to the contrary, the third-party defendants' briefing attempts to call into question the Court's prior rulings on the TAIA and the duty to defend. Absent a motion for reconsideration presented to the district judge, however, the law of the case

---

[12] Knife River also directs the Court to *Knife River Corp. - S. v. Zurich Am. Ins. Co.*, where the district court denied similar motions to dismiss as "unripe," reasoning that "liability and breach of contract can be determined (if need be) by a jury in this action." No. 3:21-CV-1344-B, 2022 WL 686625, at \*4 (N.D. Tex. Mar. 8, 2022). Pavement and Great American distinguish *Zurich* by contending that the district court never considered *Fisk*'s supposed "satellite litigation" rule. ECF No. 70 at 7; ECF No. 71 at 4 n.1. However, as explained above, no such rule exists.

controls.[13]

## V.   CONCLUSION

Accordingly, the Court **RECOMMENDS** that Great American's motion to dismiss, ECF No. 63, and Pavement's motion to dismiss, ECF No. 64, be **DENIED**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error.** *Ortiz v. San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on March 21, 2024, at Houston, Texas.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[13] Ultimately, the third-party defendants never adequately explain how Knife River's settlement of the underlying claims has any independent significance to the Court's indemnity analysis. The third-party defendants instead advocate for a policy that would effectively *encourage* an insurer to wrongfully deny coverage, regardless of whether it owed a duty to defend or indemnify. Such a policy is unsupported by Texas law. *See, e.g.*, *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 671 (Tex. 2008) ("[I]f an insurer wrongfully denies coverage and its insured then enters into an agreed judgment, the insurer is barred from challenging the reasonableness of the settlement amount."); *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 310 (5th Cir. 2021) ("[A] judgment does not bind an insurer unless 'at the time of the underlying trial or settlement, the insured bore an actual risk of liability for the damages awarded or agreed upon, or had some other meaningful incentive to ensure that the judgment or settlement accurately reflects the plaintiff's damages and thus the defendant-insured's covered liability loss.'" (quotation omitted)).

27